The first case is United States v. Terrace Johnson. Counsel. May it please the Court. Ian Richardson for the United States, and Your Honor, I'm happy to answer any questions on either the government's appeal or the defendant's cross-appeal. The district court, as we now know after Beckles, erred when it determined that the guidelines were unconstitutionally vague and that the guidelines commentary definition of the enumerated offense of robbery could not apply to the defendant's two prior New York State robbery convictions. Now that Beckles has clarified the law and made clear that the guidelines cannot be vague, we know that that decision was erroneous and the case should be remanded to the district court for resentencing, consistent with the appropriate guidelines sentencing range, which was 57 to 71 months. Mr. Johnson makes the argument of which guidelines, which value of the guidelines to apply. Can you speak to that? I can, Your Honor. The original, the version of the guidelines that was applied in the district court was the 2014 guidelines version, and that was applied because Mr. Johnson argued there would be an ex post facto violation if the 2016 guidelines were applied to him. He now argues, he now agrees on appeal that the 2014 guidelines should not have applied to him below, and in fact the 2016 guidelines should apply. And that is what the government is arguing. So we agree that the 2016 guidelines should apply. Are you both in agreement on that now? I'll ask Mr. Fields, of course. I believe we are in agreement that the 2016 guidelines should apply on remand in the district court. You know, we are holding many of these definitional cases to wait for a precedential opinion from our court. Are you aware of that? I am, Your Honor. And as I believe we pointed out in our response and reply brief, the specific issue that the defendant raises in response to the government's appeal on sentencing is that the generic definition of robbery as it applies in the 2016 guideline is narrower than the New York definition of robbery, and that's specifically with a focus on the person or presence requirement. I know that that issue has been briefed, I believe, to this panel earlier this week in the Camille Love case, and it was also argued before a prior panel in the Dupre case. It's the latest in a series of cases, and we are waiting for a precedential opinion from our court. We're all waiting for that. Understood, Your Honor. I'm happy to answer any questions that this panel has about that issue. I can also answer any questions that you have about the suppression motion. Well, you say that he didn't argue—one of your points is he didn't argue below the generic definition, right? That is correct. He did not—that was one of the arguments he did not make. The judge made a reference that it was conceded, and they take issue with that, but I didn't see them saying that they actually argued the matter below. They did not actually argue the matter below, and I believe, given the volume of sentencing litigation that occurred in the district court, when the district court said conceded, I think he meant more forfeited, just because there had been no argument on that score in the district court. But I, as Mr. Fields had pointed out, I did not find myself a specific concession in the defendant's sentencing papers. Thank you. I have no questions. Thank you, Your Honor. Mr. Fields, it's odd to see you on that side of the podium. How odd to be on this side of the podium? It's been a while. Is it warmer over there, Mr. Fields? I haven't had time to take that—to check that. You might want to savor it for a second. You're right. I will. I'm sorry. I apologize. No, no, no. I appreciate that. It is very rare to be in a palais. But I represent—and may it please the Court—I'm Daryl Fields from the Federal Defenders. I represent Mr. Johnson, and our position below, we didn't, Your Honor, we didn't argue the argument we're making here under the Enumerated Crimes Clause of the 2016 Guideline. We argued that the 2014 Guideline should apply, because at that time, that was before Beckles and— Right. That was undecided, right. Yes. So—but we—nevertheless, we argued that the district court's judgment should be affirmed, that his determination that we were not career offenders was appropriate under the 2016 Guideline, because New York robbery is not a generic robbery. It doesn't have the element of presence from the person or presence—that the taking has to be from the person or presence of the owner. And this is not an accident. New York specifically considered this and eliminated it from its statute. It was in the New York statute from 1909 to 1965. Well, there are other cases ahead of us that are going to speak to the methodology with regard to how one determines the, quote, generic crime, end of quote. It kind of creates a curious result. There's this—now there's going to be this national common law of robbery premised on how the states define it or a majority of the states define it. It's kind of an interesting idea of federalism to me. Well, it's just that it's—generic robbery is just how the majority of states define it, and the majority of states define robbery the way New York used to define robbery. Forceful taking. From the person or presence of another. It's the person or presence element that was always a part of the common law of robbery. So I walk into your house, and I pick up your wallet, and I start to walk out, and you say, and I smack you and drop you to the ground. Is that a forceful taking from your presence, even though you were in another room when I picked up the wallet? In New York, yes, it is. Okay. So I'm walking down the street, and I come upon you, and I know that you live next door, and I grab you and I beat you so that you can't preclude me from getting into your house. Yes, Your Honor. And I then go in and steal something. Is that stealing from—is that generic robbery? That is not generic robbery. And the New York legislature had concerns that it would— It would be a curious result because New York guarantees that there has to be force. It does. But you'd say it, and that was the primary concern of Congress, the fact that force and injury to an individual. But you'd say that because it doesn't have to—it has to occur, the force has to occur for it to be robbery. Yes, Your Honor. But because it doesn't have to be immediately in the presence of the property taken, somehow the policies behind finding reason to aggravate the federal sentence are not present. Wouldn't that seem like a curious result? The commission, when it amended the guidelines, said it was— 1984, the ACCA, which is the analog of the sentencing guidelines, actually defined robbery. Actually also— It defined robbery, and then they took it out, and that's what Taylor tells us about. That's right. That is correct, Your Honor. But Taylor says that you look at the generic definition, and the generic definition is what the majority of jurisdictions define. The offense says it's not the common law. That's 26 states? We have 31 states, Your Honor, that define it that way. New York was one of them. No, I mean what the definition becomes the result. Oh, I'm sorry. I'm sorry. I guess it would, Your Honor. Okay. You're right. Fair enough. It's down in the queue, but I'm just interested. Yes, Your Honor. So the majority of states define it as person or presence. It is what common law robbery was, and New York was one of those states. But their legislature considered they wanted to broaden the definition. It's not common law robbery anymore, because common law burglary was different than the burglary that Taylor accepted to be the burglary that qualified as the aggravator under the ACCA. Wasn't that the case? That is. So it's not common law robbery that defines this. It's generic robbery as understood among a majority of the states. That's right. I wasn't making myself clear. I was just saying that the generic robbery that requires the person or presence element comes from common law robbery. I'm sorry. I just wasn't clear. But it is the generic that counts, not the common law. You're absolutely right. And then generic has to be from the person or presence. I mean, the government cites a couple of shoplifting cases from other states, but those states also have that the property has to be from the custody of the person. The person has to have an ownership interest. The Alaska case and the California case, those statutes require an ownership interest. A New York statute, if you look at the Neurocritical Appeals Decision in Smith, it quotes the former statute, and it had an ownership interest. It had to be a taking from the person or presence of the owner, and everything to interdict or threaten had to be to threaten the owner. You had to have an ownership interest in the property, whereas in New York now, you don't have to have an ownership interest. So that Sloan case where someone burglarizes an unattended store, and a Good Samaritan comes by and stops the burglar, and the burglar pushes the Good Samaritan down, that in New York is a robbery, even though no one saw the taking from the store. The store was empty. The person, there's no indication that the Good Samaritan had any ownership interest, was a custodian, was a security guard. He was just a Good Samaritan. But in New York, that is robbery. And the generic case in these other states with generic robberies, that's not a robbery. Those shoplifting cases the government cites from California and Alaska, those involve security guards, people who had custodial possession of the property. You don't need to have possession, ownership, or custody in New York. New York wanted it to be broad. It wanted to capture things that were in spirit robberies, I believe was the phrase, in spirit robberies, but they weren't from the person of presence. So the New York legislature gives an example of an offense occurring a mile away. A farmer is attacked, and his house is robbed a mile away. Well, under common law, New York didn't think that would have been robbery. But it is robbery under New York now. It's robbery under New York if you compel somebody to give up a safe combination, and you go and rob the safe 20 miles away. In New York, that's robbery. Under generic robbery, that's not. It's not in the person's presence of the person. New York is broader than generic robbery. Yes, we understand that credibility determinations do get a great deal of deference, and we would have to show that it was clearly erroneous. But they are reviewable on appeal, and clearly erroneous is if they have a pretty strong conviction that something was wrong in a district court's decision. And here there is, because here what you had was you had a supervising lieutenant of 23 years who gave testimony that the district court found troubling. It found unacceptable. The district court didn't appreciate the lieutenant's demeanor. And the only other person to back up the story about this search is Officer Bruno on his first day as a plainclothes police officer, and he could have been mistaken about various things. His entry book, his memo book entries don't show anything about having sighted a gun in Mr. Johnson's waist. He also, he doesn't recall a cell phone conversation that took place later on. The supervising lieutenant had Johnson call this other gentleman, Pops, who was, Johnson and Pops were two, the top two of five, were among two of the top five people on the list of people in the precinct that this particular unit was targeting for their attentions. But Bruno doesn't remember that. He was new. It was his first day. He could have been subject to influence by the lieutenant. And the overall story that they tell is one that I think is sufficient to give pause to think that in this case, this is one of those rare cases where we meet the clear running standard. Thank you. Thank you. You understand that this case is going to go into our queue. Your argument to the contrary notwithstanding. On the enumerated crimes clause and on the 2016. Yes, yes. I do. Good. Thank you. Mr. Richardson. I'm happy to respond to some of the arguments. I understand that it's going in the queue on the enumerated offense clause. I think that the defense's brief tells only half the story. It looks at the state statutory law, but it doesn't treat the state decisional law in the other states. And those decisions of the state's highest course in the intermediate courts of appeal tell a somewhat different story about how the person or presence requirement is applied across the country. And I think after you consider those decisions, which are discussed in the government's brief, it's a standard and it's an element that's applied significantly more loosely than the defense suggests. And, in fact, in a way that is consistent with how the New York courts have applied their law. I would also note that when this court first considered this argument in the United States v. Walker, it looked to the model penal code. The model penal code does not include a person or presence requirement. So I- That's because most of the people participating in the model penal code were New York lawyers of great renown. Dick Uveller and a whole other crew of people that I regularly paddled around with a long time ago in my other life. And I agree with you. I mean, you know, I just think this is a rabbit's hole that we're going down. But I guess we're going down it. So it doesn't matter. Whether we want to or not. I don't envy your task. It's going to take some time. And in the meantime, we'll be filing briefs on the subject as well. I bet you will. I can also respond to some of the- To answer Judge Chin's question, there's no reason not to defer to the credibility determination of the district court. The district court was very sensitive to all of the arguments that were made by defense counsels to the credibility of the three police officers who testified. He considered carefully all of the attacks on their credibility that the defense made. And the defense made possibly every single attack that they could think of. But after that, after considering all of those arguments, the district court found absolutely nothing wrong with the testimony of Officer Bruno. And in crediting Officer Bruno's testimony, that he saw the firearm sticking out of the defendant's pants, that alone was sufficient for the government to carry its burden at the evidentiary hearing. Unless there's further questions, I'll- Thank you both. As you know, we'll reserve- I just have one minute on my suppression issue. I just wanted to point out that at the- That defense theory, if you look at the oral argument on April 21, 2016, the defense position wasn't that the judge had to find that Bruno had gotten together with his lieutenant and they had conspired to lie. I mean, the defense counsel specifically is asked by the court, is there a middle ground other than finding a conspiracy? And she responds that there is a middle ground. She's not saying that there's any grand conspiracy. And if you look at our supplement appendix from pages 643 to page 660, you'll see that throughout defense counsel's argument, she's challenging Bruno's- the accuracy of what he said, not his honesty at various points. She's not arguing that you absolutely have to find that Bruno conspired with his lieutenant to tell this story, but that if you look at the fact that his memo book entries don't record things and that he doesn't remember certain things and it was his first day and he could have been influenced by suggestions from his lieutenant, that that's why the court should have credit. Thank you. Thank you, Your Honor. Thank you both. As you know, we'll reserve decision.